Filed 7/17/26  P. v. Jones CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F088556 |
| Plaintiff and Respondent, | (Super. Ct. No. F21901790) |
| v. | |
| KHALIF HASAN JONES, | OPINION |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Mark E. Cullers, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christpher J. Rench and Jessica Trieu-Simerly, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

# INTRODUCTION

Defendant Khalif Hasan Jones (defendant) entered into a negotiated plea agreement where he pled guilty to an amended charge of second degree murder and admitted that he personally and intentionally discharged a firearm causing great bodily injury or death for a maximum sentence of 40 years to life. Before sentencing, defendant invited the trial court to dismiss his firearm enhancement under section 1385, subdivision (c)(2) or to impose a lesser included, uncharged firearm enhancement. The court declined to dismiss the enhancement or impose a lesser enhancement and imposed a term of 40 years to life.

Defendant contends on appeal that (1) the trial court was unaware of the scope of its discretion to dismiss the firearm enhancement and abused its discretion when it declined to dismiss his firearm enhancement based on a finding of danger to public safety; (2) the court was unaware of its discretion to impose a lesser firearm enhancement and abused its discretion in declining to impose a lesser firearm enhancement; and (3) counsel rendered ineffective assistance of counsel by failing to adequately brief and argue the mitigating issues relevant to youth offenders and childhood trauma, and by failing to address the lesser firearm enhancement at the hearing. The People disagree and argue the court properly exercised its discretion and did not abuse its discretion in declining to dismiss the firearm enhancement or impose a lesser enhancement. The People also contend defendant fails to demonstrate ineffective assistance of counsel but note clerical errors in the August 14, 2024 first amended minute order and abstract of judgment should be corrected.

We conclude that while the record suggests the trial court applied a more restrictive scope of its discretion in declining to dismiss the firearm enhancement, remand is unnecessary since the record clearly indicates the court would have reached the same

2.

conclusion. We further conclude defendant fails to demonstrate the court abused its discretion in declining to dismiss the firearm enhancement or to impose a lesser firearm enhancement, and fails to demonstrate ineffective assistance of counsel. However, we agree with the People that clerical errors exist in the record and order the court to correct its records. In all other respects, we affirm the judgment.

## PROCEDURAL SUMMARY

The Fresno County District Attorney filed a felony complaint charging defendant with first degree murder, alleging the murder was committed while lying in wait (Pen. Code,[1] §§ 187, subd. (a), 190.2, subd. (a)(15)). The complaint further alleged defendant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)).

On July 18, 2023, defendant entered into a negotiated plea agreement whereby defendant pled guilty to an amended charge of second degree murder (§ 187, subd. (a)) and admitted that he personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), in exchange for a maximum 40-year-to-life term. Defendant later filed a motion to withdraw his plea, which the trial court denied.

Prior to sentencing, both parties submitted sentencing briefs. The prosecution filed a statement in aggravation, which included records to be made available for defendant's future youth offender parole hearing consideration. Defendant filed an invitation for the trial court to dismiss the firearm enhancement pursuant to section 1385, subdivision (c)(2), arguing there was a rebuttable presumption in favor of dismissing the enhancement pursuant to *People v. Walker* (2022) 86 Cal.App.5th 386 (*Walker I*). Alternatively, citing *People v. Tirado* (2022) 12 Cal.5th 688 and *People v. McDavid* (2024) 15 Cal.5th 1015, defendant asked the court to impose a lesser punishment under section 12022.5 because he was only 19 years old at the commission of the murder, had

---

[1]     Hereinafter, undesignated statutory references are to the Penal Code.

3.

no prior criminal record, and had accepted responsibility at an early stage of the proceedings. Defendant filed a psychological evaluation report by Dr. Carolyn Murphy, a clinical psychologist. Defendant also filed supplemental points and authorities addressing *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*). The People filed a supplemental statement in aggravation addressing *Gonzalez* and requesting the court deny defendant's invitation to strike the firearm enhancement or sentence him to a lesser firearm enhancement.

On August 14, 2024, the trial court declined to dismiss the firearm enhancement or sentence defendant to a lesser enhancement and imposed a 40-year-to-life term, comprised of 15 years to life in state prison for second degree murder and 25 years to life for the firearm enhancement. Defendant filed a timely notice of appeal and was granted a certificate of probable cause.

## FACTUAL SUMMARY[2]

In the evening of November 27, 2019, C.M. contacted the Fresno Police Department to report her son, E.V., was shot inside his bedroom while playing video games. Police responded and found E.V. still breathing. He had been shot in the head, above his right eyebrow, and his right rear shoulder. E.V. was transported to the hospital and pronounced deceased on November 29, 2019.

At the scene, officers located two large bullet holes in the bedroom window and two expended .45-caliber cartridges on the ground outside, north of the window. Homicide detectives recovered video surveillance footage from a nearby property. In the video, four individuals (two males and two females) are observed exiting a four-door sedan. They walked up to E.V.'s bedroom window and then walked past it. About 10 minutes later, the same four individuals walked toward E.V.'s bedroom window again. One male, later identified as defendant, walked directly to E.V.'s window while the other

---

[2]    Facts are summarized from the probation report.

4.

three individuals continued walking to the parked sedan. Defendant is then seen running from the window to the parked sedan, which leaves the area.

Detectives spoke with E.V.'s girlfriend, who told them she learned there was a bounty placed on E.V.'s head. On December 6, 2019, a confidential informant provided information identifying the shooter as defendant. An unknown citizen contacted the homicide detectives and identified defendant as the shooter. Detectives had witnesses review security footage and they identified defendant as the shooter.

Detectives received a phone call from the United States Marshal's team from the Las Vegas Metro Police Department, advising them that defendant had barricaded himself inside a residence in Las Vegas. Defendant eventually surrendered and was taken into custody. Fresno detectives arrived in Las Vegas, made contact with defendant and advised him of his *Miranda*[3] rights. Defendant denied knowing E.V. and denied shooting E.V.

In defendant's plea agreement, he alleged the following facts on which his plea was based: "On [November 27, 2019,] I shot [the victim] with a handgun with malice aforethought causing his death." (Unnecessary capitalization omitted.)

## DISCUSSION

**The Trial Court Did Not Abuse its Discretion by Declining to Dismiss the Firearm Enhancement**

Defendant claims the trial court abused its discretion when it declined to strike his firearm enhancement on the basis the court was unaware of the proper scope of its discretion and that it further abused its discretion by not considering all the mitigating factors under section 1385, subdivision (c)(2). Defendant also contends the court erred when it concluded defendant posed a danger to public safety without sufficient consideration of his future dangerousness. We cannot conclude the court understood its

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

discretion under section 1385, subdivision (c)(2) since *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) was decided after defendant was sentenced. However, the error did not prejudice defendant since the trial court exercised a more restrictive discretion and the record is clear the court would have ruled the same if it had been aware of its less restrictive discretion under *Walker*. Defendant also fails to demonstrate the court failed to consider mitigating factors under section 1385, subdivision (c)(2) or that it focused only on present dangerousness.

**Relevant Factual and Procedural Background**

The prosecution filed a statement in aggravation, which included information and school records that could be utilized in a future youthful offender parole hearing pursuant to section 3051. The brief summarized the facts regarding defendant's murder conviction and the battery causing serious bodily injury committed while in custody. It mentioned relevant factors in aggravation (Cal. Rules of Court,[4] rule 4.421(a)(1)–(a)(3), (a)(8) & (b)(1)) and mitigation (rule 4.423(b)(1), (6), (10)) for the trial court to consider. The prosecutor indicated the only applicable factor under section 1385, subdivision (c)(2) was subdivision (c)(2)(C), that application of the enhancement would result in a sentence of over 20 years, but contended that dismissal of the enhancement would significantly endanger public safety. The prosecutor argued the court should deny any request to strike the firearm enhancement.

Defendant filed an invitation for the trial court to dismiss the firearm enhancement pursuant to section 1385, subdivision (c)(2). Defendant acknowledged that the courts were divided over whether section 1385, subdivision (c)(2) created a presumption in favor of striking enhancement allegations when one or more of the enumerated factors were present. He stated that section 1385, subdivision (c)(2)(C) applied to his case because the firearm enhancement exceeded 20 years. Defendant asked the court to

---

[4]     Hereinafter, undesignated rules are to the California Rules of Court.

follow the Second District Court of Appeal's decision in *Walker I*, which held there was a rebuttable presumption in favor of dismissing an enhancement if it met the mitigating factors under section 1385, subdivision (c)(2). (See *Walker I*, *supra*, 86 Cal.App.5th at p. 398.) Defendant also contended that even if there was no rebuttable presumption, the court need not decline to dismiss the enhancement due to public safety, arguing it was not a concern because defendant was serving an indeterminate life sentence and would not be released on parole by the board of parole hearings if he presented a danger to society.

Both parties submitted supplemental briefs addressing *Gonzalez*, which affirmed that the trial court should acknowledge the role of the board of parole hearings and that defendant's release would be subject to review by the board and the Governor when considering whether a reduced sentence will endanger public safety. Alternatively, defendant requested that the court reduce punishment for the firearm enhancement under section 12022.5.

At the sentencing hearing, the trial court confirmed it was in possession of the sentencing memorandum, which included Murphy's evaluation report, and that it read and considered the supplemental points and authorities filed by defendant, supplemental statement in aggravation filed by the prosecution, the probation report, and letters submitted on behalf of defendant.

Both parties presented arguments, reiterating points raised in their briefs. In arguing enumerated circumstances under section 1385, subdivision (c)(2), defense counsel added that defendant has a history of childhood trauma, which was set forth in the evaluator's report, that weighed heavily in favor of dismissing the enhancement. Defense counsel argued that under *Gonzalez*, when evaluating whether dismissing an enhancement will endanger public safety, the trial court was required to consider the role the board of parole hearings will have when reviewing whether to release defendant. Defendant provided the court with 12 certificates of completion for various jail programs that defendant completed between April 2021 and May 2022. On the childhood trauma

factor, the prosecution countered that even though defendant had a huge amount of family support, he chose to commit this brutal murder. Defendant did not show remorse for the murder and then committed another crime while in custody. The court then heard victim impact statements and statements from defendant's family members.

The trial court addressed the defendant's invitation to dismiss the enhancement. It considered *Gonzalez* and was "mindful" that it had to give "great weight" to the mitigating factors, and that the "presumption to dismiss the enhancement is great." However, the court declined to dismiss the enhancement. It explained it had read and considered defendant's supplemental points and authorities in support of the invitation to dismiss the enhancement and the prosecution's supplemental statement in aggravation and found that "it would endanger public safety for the enhancement to be dismissed." The court gave the following explanation:

> "The [c]ourt is troubled … I have listened to both sides, both families. This is absolutely heartbreaking.… [A]nd it's a shame that we're all here. It really is. I understand he's youthful, but we all have choices. We've all had choices. I've listed to [defendant] say that this was not unprovoked. I don't know. It hasn't been brought out in a trial, but it is greatly disturbing that someone could be shot in the head almost at point blank range while sitting in their bedroom. That happened in 2019.
>
> "It didn't stop there for [defendant] and that's what troubles this [c]ourt. Because in May … 2023, he stomped on somebody's head so much that he gave them multiple skull fractures, a slight brain bleed and an orbital fracture.
>
> "I understand childhood trauma. I recognize childhood trauma, but that is above and beyond. So the [c]ourt finds and determines that it will not dismiss the enhancement. [The court f]inds that the presumption has been overcome …."

After sentence was imposed, defense counsel asked the trial court to read defendant his appellate rights, informing the court of their intention "to file a notice of appeal on the two discreet issues that were available."

**Applicable Law and Standard of Review**

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 to specify mitigating circumstances the trial court should consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. Section 1385, subdivision (c), in pertinent part, provides: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so .… (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(1)–(2).) One of the enumerated mitigating circumstances is when "[t]he application of an enhancement could result in a sentence of over 20 years." (§ 1385, subd. (c)(2)(C).)

The *Walker I* trial court "conclude[d] that section 1385's mandate to 'afford great weight' to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement unless the court finds that dismissal of that enhancement … would endanger public safety." (*Walker I*, *supra*, 86 Cal.App.5th at p. 391.) The Sixth District Court of Appeal in *Ortiz* subsequently disagreed, concluding instead that section 1385, subdivision (c)(2) does not preclude a court from relying on countervailing aggravating factors, apart from a danger to public safety, to uphold an enhancement, despite the presence of one or more mitigating circumstances. (See *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098 (*Ortiz*).) Our Supreme Court granted review in *Walker I* to resolve the conflict.

9.

On August 15, 2024, the Supreme Court published its opinion in *Walker* concluding that "the plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding. Specifically, absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Walker*, *supra*, 16 Cal.5th at p. 1029; see *Ortiz*, *supra*, 87 Cal.App.5th at p. 1098.)

A trial court's determination regarding whether to strike a sentence enhancement under section 1385 is reviewed for abuse of discretion. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 225; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) Defendant bears the burden of demonstrating that the court's exercise of discretion was arbitrary, capricious or patently absurd, resulting in a manifest miscarriage of justice. (*Mendoza*, at p. 298.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*People v. Moine* (2021) 62 Cal.App.5th 440, 448.)

"[A] ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid*.)

When the abuse of discretion claim arises from the trial court's basing its decision on impermissible factors or on an incorrect legal standard, the defendant must " 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' " (*People v. Lee* (2017) 16 Cal.App.5th 861, 866; see *Gonzalez*, *supra*, 103 Cal.App.5th at p. 225.) " ' "In the absence of such a showing, the trial court is presumed

to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Carmony*, *supra*, 33 Cal.4th 357 at pp. 376–377.)

**Analysis**

### The Trial Court's Discretion Under Section 1385, Subdivision (c)(2)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) " 'A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*Ibid*.; *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)

The trial court sentenced defendant just before our Supreme Court issued its opinion in *Walker*, which clarified the scope of discretion under section 1385, subdivision (c)(2). Relevant here, *Walker* concluded the court of appeal "erred by concluding that section 1385, subdivision (c)(2) creates a rebuttable presumption in favor of dismissing an enhancement that can only be overcome by a finding that dismissal endangers public safety." (*Walker*, *supra*, 16 Cal.4th at p. 1034.) The trial court did not plainly state that it was following the *Walker I* appellate court decision that section 1385, subdivision (c)(2) created a rebuttable presumption in favor of dismissal. However, its statements that the "presumption to dismiss the enhancement is great" and that "the presumption has been overcome" suggest the court believed that the presence of a mitigating circumstance under section 1385, subdivision (c)(2) created a rebuttable presumption in favor of dismissal. Since the record is ambiguous and the court's comments suggest it relied on the now erroneous *Walker I* presumption, we cannot presume the court understood and applied the correct scope of its discretion. (See *People v. Ochoa* (2020) 53 Cal.App.5th 841, 853–854 [no presumption court understood its

discretion where the record is ambiguous and court's comments raise doubt it understood the scope of its discretion].)

However, even when the record indicates a trial court misunderstood or was unaware of the scope of its discretion, remand is not required where the record " 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) In *Walker*, the Supreme Court considered what effect its ruling that the "enumerated mitigating circumstances to 'weigh[] greatly' in favor of dismissal" had on the trial court's dismissal under a rebuttable presumption. (*Walker*, *supra*, 16 Cal.5th at p. 1038.) Since the court refused to dismiss the defendant's enhancement under a presumption that favored dismissal and could only be overcome by a finding that dismissal would endanger public safety, *Walker* did not find remand necessary under their now "less restrictive understanding of a trial court's authority pursuant to section 1385, subdivision (c)(2)." (*Walker*, at p. 1038.) Under *Walker's* less restrictive understanding of a trial court's discretion under section 1385, subdivision (c)(2), removing the presumption and calling the court to give great weight to the mitigating circumstances, the court demonstrated that it already met this standard. (*Walker*, at p. 1038.) Similarly here, even though the trial court appeared to believe the presence of an enumerated circumstance created a presumption in favor of dismissal, it found factors in aggravation demonstrating defendant was a danger to public safety were substantial enough to overcome the presumption. Additionally, the court explained that it was mindful to give great weight to the mitigating factors. As such, the record clearly indicates that the trial court would have reached the same conclusion even if it had been aware of the less restrictive discretion under *Walker*. Therefore, remand is unnecessary. (*Gutierrez*, at p. 1391.)

12.

**The Trial Court Did Not Abuse its Discretion in Declining to Dismiss the Firearm Enhancement on the Grounds that Dismissal Would Endanger Public Safety**

We further conclude defendant fails to demonstrate the trial court otherwise abused its discretion in declining to dismiss his firearm enhancement. *Walker* endorsed the *Ortiz* court's understanding that a "trial court must 'engage[] in a holistic balancing with special emphasis on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of … dismissal.' " (*Walker*, *supra*, 16 Cal.5th at p. 1036 (italics omitted); see *Ortiz*, *supra*, 87 Cal.App.5th at p. 1096.) "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement." (*Walker*, at p. 1036.) In other words, if the court finds that dismissal of an enhancement would endanger public safety, it relieves the court of its obligation to consider any of the mitigating circumstances listed in subdivision (c)(2) of section 1385. (See *Walker*, at p. 1038; *Mendoza*, *supra*, 88 Cal.App.5th at pp. 296, 297.) Here, the court declined to dismiss the firearm enhancement on the grounds that dismissal would endanger public safety.

Defendant contends that in light of *Gonzalez*, the trial court applied an erroneous legal standard by evaluating future dangerousness solely on the present danger. The *Gonzalez* court explained the relevant factors a court should consider in determining whether dismissal of an enhancement under section 1385, subdivision (c)(2) would endanger public safety. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) In *Gonzalez*, the defendant was convicted of first degree murder with the use of a firearm. He had a prior serious felony conviction and a prior strike conviction. (*Gonzalez*, at p. 220.) On remand for resentencing, the defendant sought to have his firearm enhancement dismissed under section 1385, subdivision (c)(2) on the grounds that mitigating circumstances were present and dismissal would not endanger public safety. (*Id*. at p. 222.) The defendant argued the public safety inquiry was a "forward-looking inquiry" and asked the court to consider that the defendant had an indeterminate sentence, which meant he would not be

released anytime in the near future, and that future parole consideration would be subject to review by the parole board and the Governor. (*Id.* at p. 223.) The trial court believed "it was required to decide whether the defendant 'currently at the time of sentencing represent[s] a danger to society.' " (*Id.* at p. 227.) It then declined to dismiss the firearm enhancement on the basis that the defendant " 'presently … does represent a danger to society.' " (*Id.* at p. 224.)

The appellate court concluded the trial court erred because it considered only whether the defendant currently posed a danger to the public when assessing whether dismissing the firearm enhancement would endanger public safety. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 230.) "Although the current dangerousness of the defendant is an appropriate factor to consider, … a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Id.* at p. 228 [a currently dangerous defendant who will be released soon might pose a greater danger to the public than a defendant who has no prospect of release until he is elderly].) *Gonzalez* added that trial courts should also take into account that the defendant's release from prison will be contingent on review by the parole board and in some cases, the Governor. (*Ibid.*) It concluded that the trial court's application of an erroneous legal standard constituted an abuse of discretion. (*Id.* at p. 230.)

In contrast here, the record does not establish that the trial court applied an erroneous legal standard in finding dismissal of the enhancement would endanger public safety. At the hearing, the trial court explained that it considered *Gonzalez* when it determined that dismissing the enhancement would endanger public safety. The court considered the facts of the current offense, which it found greatly disturbing, and was troubled that defendant's violent conduct continued while in custody. Regarding the current offense, defendant approached the victim while he was unaware and inside his bedroom playing a video game. Defendant brought a firearm with him as he went up to the victim's window and shot the victim twice at close range: in his head and in his

shoulder. The victim was unsuspecting and not posing any threat to defendant at the time, which the court found to be "greatly disturbing." The court was also troubled that defendant's violent conduct continued even after being arrested. Over three years after the murder took place, defendant participated in a violent group assault against an inmate. Surveillance video showed defendant use the pull-up bars on the wall as leverage to stomp on the victim's head and back about seven times. Defendant also used a table to jump off of and onto the victim from an elevated position. As a result, the victim sustained "multiple skull fractures, a slight brain bleed and an orbital fracture." Defendant's actions demonstrate that he continues to lack any regard for the safety or well-being of others or any ability to control his violent behavior.

The court also explained that it had read and considered defendant's supplemental points and authorities in support of the invitation to dismiss the enhancement and the prosecution's supplemental statement in aggravation. Both briefs addressed the relevant considerations under *Gonzalez* for finding that dismissal would endanger public safety. In its statement, the prosecution argued that if the court dismissed the firearm enhancement, defendant would be eligible for parole in just 15 years, which, given defendant's violence, callousness and lack of remorse, would significantly endanger public safety. Defendant had yet to show any remorse or participate in any meaningful rehabilitative programs, demonstrating he would still pose a danger to public safety in 15 years, even though a parole board and Governor would review his release. Thus, by implication, the court considered the *Gonzalez* factors for future dangerousness, including defendant's length of sentence if the enhancement was dismissed and that defendant's release would be contingent on review by the parole board. Accordingly, substantial evidence supports the court's finding that dismissal of the enhancement would endanger public safety. (See *People v. Moine*, *supra*, 62 Cal.App.5th at p. 448.)

We disagree with defendant's argument that because the court only mentioned the current conviction and subsequent conviction, we should assume the court only

considered current dangerousness and applied an erroneous legal standard. The fact that the court focused its explanatory comments on the violence and callousness of defendant's conviction and subsequent conviction does not mean that it did not consider the other relevant factors. (See e.g., *People v. Myer* (1999) 69 Cal.App.4th 305, 310 [the court's focus on the violence of appellant's crimes does not mean that it considered only that factor].) Unlike in *Gonzalez*, the trial court did not state it was considering only whether defendant currently poses a danger to the public. (See *Gonzalez*, *supra*, 103 Cal.App.5th at p. 230.) And the record shows the court considered the parties' briefs which discussed the relevant factors under *Gonzalez*. Further, nothing in the record affirmatively demonstrates the court applied an erroneous legal standard or failed to consider the relevant factors. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [the court " 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.' "]; see also *Gonzalez*, at p. 225 [defendant must affirmatively demonstrate the court misunderstood its discretion].) Therefore, we cannot conclude the trial court abused its discretion in declining to dismiss the enhancement under section 1385, subdivision (c)(2).

> **The Trial Court Did Not Abuse its Discretion in Declining to Dismiss the Firearm Enhancement Where it Would Not Be in the Furtherance of Justice**

Under section 1385, the trial court retains discretion to impose or dismiss enhancements even absent a finding that dismissal would endanger public safety provided that it "assigns significant value to the enumerated mitigating circumstances when they are present." (*Walker*, *supra*, 16 Cal.5th at p. 1029.) "Pursuant to section 1385, subdivision (c)(2), absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present. In practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the

16.

sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker*, at p. 1038; *Ortiz*, *supra*, 87 Cal.App.5th at p. 1098.)  There must be "substantial, relevant, and credible evidence of aggravating factors to neutralize the 'great weight' of the mitigating circumstances." (*Walker*, at p. 1036.)

"The language of section 1385, [subdivision] (c)(2) … reflects a legislative recognition that a trial court's exercise of sentencing discretion involves more than a strictly binary weighing of mitigation against public safety." (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1097.)  The court's determination of whether dismissal is in furtherance of justice involves generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects.  (*Ibid*.)  These principles require consideration of aggravating and mitigating circumstances "in the broader context of the recognized objectives of sentencing, which are not limited to public safety." (*Ortiz*, at p. 1097; see rule 4.410.)

As discussed ante, the trial court need not weigh mitigating circumstances since it determined that dismissing the enhancement would endanger public safety.  (See *Walker*, *supra*, 16 Cal.5th at p. 1038.)  Regardless, even aside from the public safety determination, substantial evidence supports the court necessarily determined that dismissing the firearm enhancement would not be in the furtherance of justice.  The record shows the court considered the relevant and applicable sentencing principles in regard to the aggravating and mitigating circumstances.  (See *Ortiz*, *supra*, 87 Cal.App.5th at p. 1097.)  The court read and considered the parties' briefs, supplemental briefs, and all attached records and documents, which included school records, certificates of programs completed in custody, information regarding defendant's background, adverse childhood trauma, defendant's character and prospects.  (*Ibid*.)  These mitigating circumstances were also discussed by the parties at sentencing.  Yet, the

17.

court found defendant's mitigating circumstances were outweighed by his aggravating circumstances. The court described defendant's crime as "greatly disturbing that someone could be shot in the head almost at point blank range while sitting in their bedroom." The court noted that "[i]t didn't stop there … and that's what troubles this [c]ourt." After shooting the victim in the head, defendant continued his violent behavior while in custody and "stomped on somebody's head so much that he gave them multiple skull fractures, a slight brain bleed and an orbital fracture." The court recognized that it was required to give great weight to any mitigating factors, but declined to strike the enhancement. Thus, the record demonstrates the court found the aggravating factors neutralized the great weight of the mitigating circumstances. (See *Walker*, at p. 1036.) Defendant fails to demonstrate that the trial court's decision to not dismiss the enhancement was so irrational or arbitrary that it abused its discretion. (See *Carmony*, *supra*, 33 Cal.4th at p. 377.)

Defendant's arguments that it is unclear if the court connected his childhood trauma to the offense, understood the role of youth as a mitigating factor, did not give great weight to his lack of criminal history, or acknowledge his plea at an early stage of the proceedings do not alter our conclusion. Defendant relies on the fact that the court did not specifically address defendant's school records or evaluation report as proof that the court did not give great weight to these mitigating factors. However, the record shows the court read and considered each of the mitigating factors raised by defendant, which were raised in briefing and discussed during the sentencing hearing. After hearing from defense counsel regarding defendant's adverse childhood trauma, the court asked the prosecution to respond in terms of how to weigh defendant's childhood trauma. This interaction reveals the court specifically gave great weight and significant consideration to defendant's childhood trauma as a mitigating factor.

Regardless, the trial court is not required to make a record stating its reasons for declining to exercise its discretion under section 1385. (*People v. Brugman*, *supra*, 62

18.

Cal.App.5th at p. 637.)  Where the record is silent, we presume the court considered all of the relevant mitigating factors in the absence of evidence to the contrary.  (*Ibid*.; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 [error may not be presumed from a silent record].)  We do not infer an abuse of discretion from a silent record.  (*People v. Czirban* (2021) 67 Cal.App.5th 1073, 1097; *Gutierrez*, *supra*, 174 Cal.App.4th at p. 527.)  Accordingly, defendant fails to demonstrate the court abused its discretion.

**Lesser Included, Uncharged Firearm Enhancement**

As an alternative to dismissing the firearm enhancement, defendant asked the trial court to impose a lesser included, uncharged firearm enhancement.  Defendant argues the court was either unaware of its discretion to impose a lesser firearm enhancement or abused its discretion in declining to do so.

Under section 12022.53, subdivision (h), "[t]he court may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section."  The trial court may also impose a lesser included, uncharged enhancement under a statute other than section 12022.53, if facts supporting the imposition of the lesser enhancement have been alleged and found true.  (*People v. McDavid*, *supra*, 15 Cal.5th at p. 1030; *People v. Tirado*, *supra*, 12 Cal.5th at p. 697.)  We review a court's determination of whether to strike a firearm enhancement and imposing a lesser included, uncharged enhancement for abuse of discretion.  (See *Gonzalez*, *supra*, 103 Cal.App.5th at p. 225.)

Although the trial court did not specifically state its reasons for not imposing a lesser included, uncharged firearm enhancement, it was not required to state each potential way it could exercise its discretion.  Regardless, the record shows the court was aware of defendant's request to impose a lesser firearm enhancement since he presented this request through his invitation to dismiss his enhancement, citing *Tirado* and *McDavid*, and in his supplemental points and authorities, which the court said it read and

19.

considered. Although the court did not expressly discuss the option of imposing a lesser firearm enhancement at the hearing, defendant fails to point to any evidence in the record showing the court was unaware of its discretion under *Tirado* or *McDavid*. On this record, we presume the court was aware of and correctly applied the law. (See *People v. Thomas* (2011) 52 Cal.4th 336, 361.) Therefore, defendant fails to demonstrate the court abused its discretion in not imposing a lesser included, uncharged firearm enhancement. (See *People v. Czirban*, *supra*, 67 Cal.App.5th at p. 1097 [we do not infer an abuse of discretion from a silent record].)

**Ineffective Assistance of Counsel**

Defendant contends he was deprived of effective assistance of counsel based on his counsel's failure to: (1) adequately brief or argue "the hallmarks of youth" and its impacts on criminal conduct, (2) inform the court of the implications of childhood trauma on his criminal conduct, (3) object to the court's comments about his ability to make choices, (4) "significantly bolster[]" his argument on danger to public safety by highlighting the science in the evaluator's report, and (5) argue for the imposition of a lesser firearm enhancement at the sentencing hearing.

### Applicable Law and Standard of Review

To prevail on an ineffective assistance of counsel claim, defendant must show defense counsel's performance was deficient under an objective standard of reasonableness, and a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id*. at p. 694.) If a defendant makes an insufficient showing on either component, the ineffective assistance of counsel claim fails. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126, abrogated on another ground in

20.

*People v. Leon* (2020) 8 Cal.5th 831, 848; *Strickland*, at p. 697 [may dispose of an ineffectiveness claim on lack of sufficient prejudice].)

"On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

**Analysis**

Defendant fails to meet his burden of demonstrating that his counsel's performance was deficient or that but for counsel's deficient performance, the outcome of the proceeding would have been different.  (See *Strickland v. Washington*, *supra*, 466 U.S. at p. 687.)  The record fails to disclose counsel had no rational tactical purpose for the challenged acts or omissions, that counsel was asked for a reason and failed to provide one, or that there could be no satisfactory explanation.  (See *Mai*, *supra*, 57 Cal.4th at p. 1009.)

Although defendant argues that his attorney should have focused the trial court's attention more on his youth and childhood trauma, argued for the court to impose a lesser firearm enhancement, and relied on the evaluator's report to defend against public safety, he also acknowledges that these issues and the report were presented to the court through briefing.  Additionally, defense counsel did argue defendant's childhood trauma at sentencing and referred the court's attention to the evaluator's report, which went into detail regarding defendant's background, youthfulness, childhood trauma and prospects.  Defense counsel may have felt that defendant's youth, childhood trauma and prospects were adequately discussed in the evaluation report since counsel asked the court to "incorporate [it] into [his] argument" during the sentencing hearing.  Therefore, on this record, defendant fails to demonstrate counsel did not have a rational tactical purpose for

21.

how he presented these arguments at sentencing. (See *People v. Lucas* (1995) 12 Cal.4th 415, 485 [record must affirmatively disclose there was no rational tactical purpose].)

Additionally, counsel could have decided to focus his arguments at the sentencing hearing on the most important or most compelling points. It is not unreasonable for counsel to focus its time before the court on the issues it feels are the strongest and most likely to succeed. Here, defense counsel focused his argument on dismissing the firearm enhancement, which he described as "most important[]." At the time of sentencing, defense counsel was able to argue for a presumption in favor of dismissing the enhancement where an enumerated factor was present, which counsel may have rationally believed presented the best chance of success.

Regarding defendant's challenge to his counsel's failure to object "[w]hen the court discounted the idea of childhood trauma" or suggested defendant had the same ability to make choices as everyone else, defendant offers no evidence showing his counsel had no tactical reason for not objecting. The record does not provide any insight or explanation regarding counsel's reason for not objecting. We will not assume from a silent record that counsel's failure to object to the trial court's comments rendered ineffective assistance of counsel. (*People v. Ramirez* (2022) 79 Cal.App.5th 48, 61.) Where " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] … unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266; see *Mai*, *supra*, 57 Cal.4th at p. 1009.)

On this record, defendant fails to establish that his counsel's performance was deficient, or otherwise fell below the objective standards of reasonableness. His claim of ineffective assistance of counsel may be rejected on this basis. (See *People v. Rodrigues*, *supra*, 8 Cal.4th at p. 1126 [where defendant makes an insufficient showing on either component, the ineffective assistance of counsel claim fails].)

Even so, defendant also fails to establish prejudice. The trial court expressly ruled that dismissing the firearm enhancement would endanger public safety. Because the court determined dismissing the enhancement would endanger public safety, it was relieved of its obligation to weigh the mitigating circumstances. (*Walker*, *supra*, 16 Cal.5th at p. 1038; *Mendoza*, *supra*, 88 Cal.App.5th at pp. 296, 297.) Therefore, even if defense counsel had raised additional arguments regarding youthfulness, imposing a lesser enhancement, or objected to the court's discussion regarding defendant's choices, he fails to demonstrate that the outcome would have been different. Accordingly, defendant fails to meet his burden of establishing ineffective assistance of counsel.

**Clerical Errors**

The People contend the trial court's August 14, 2024 first amended minute order and correlating abstract of judgment should be corrected to reflect the court's oral pronouncement of judgment. When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) The court imposed an indeterminate 25-year-to-life sentence for the firearm enhancement. However, the August 14, 2024 first amended minute order and the abstract of judgment indicate a determinate 25-year term instead. The discrepancy here amounts to clerical error.

Courts have the inherent power to correct clerical errors in their records at any time. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) As such, we order the trial court to correct its August 14, 2024 first amended minute order and abstract of judgment to reflect the court imposed a 25-year-to-life indeterminate term for the firearm enhancement.

## DISPOSITION

We order the trial court to correct its August 14, 2024 first amended minute order and abstract of judgment to reflect that the court imposed a 25-year-to-life indeterminate term for the firearm enhancement.  In all other respects, the judgment is affirmed.